## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

SIRIUS TECHNOLOGY ADVANCED
RESEARCH, LLC; and STAR
UNACKNOWLEDGED, LLC;                    Case No. 1:23-cv-09560-DEH

*Plaintiffs,*
v.

CHICKEN SOUP FOR THE SOUL
ENTERTAINMENT, INC.;
TOFG, LLC/d.b.a. 1091 PICTURES; and DOES
1-10
*Defendants.*

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW, Plaintiffs SIRIUS TECHNOLOGY ADVANCED RESEARCH, LLC; and

STAR UNACKNOWLEDGED, LLC,  by and through their attorney, Law Office of Derek V.

Garcia, LLC (Derek Garcia, Esq.), and hereby Replies to Defendants' Response to Motion for

Preliminary Injunction ["Motion for Preliminary Injunction," "Response," (Doc. 13) (Doc. 24)

filed December 22, 2023].  Plaintiffs' Motion should be granted for the following reasons:

## ARGUMENT

Defendants' main argument is that the Plaintiffs have failed to carry their burden of

persuasion allowing for issuance of a Preliminary Injunction, primarily requesting suspension or

termination of the underlying contracts at issue, allowing for Plaintiff to efficiently transfer rights

of distribution to a new distributor and begin to thereby mitigate their damages, and other

specifically tailored relief requested.  Response, at p. 13.  Plaintiffs have satisfied their burden of

persuasion because Plaintiff herein proffers the following evidence to be true and accepted as

evidence before the Court, in the form of Party testimony binding through attorney proffer.

1

Individual Plaintiff identified herein is also willing to testify at any live hearing associated with resolution of Plaintiffs' Motion for Preliminary Injunction, should this Court grant a hearing on this Motion to confirm the following proffers and evidence as substantially true:

I, Dr. Steven M. Greer, am prepared to swear and affirm, under oath, substantially as follows:

(1) I am the founder, director and Chief Executive Officer of Sirius Technology Advanced Research, LLC and STAR Unacknowledged, LLC, both Plaintiffs to the above-titled action.

(2) In order to move forward with pending offer(s) from alternate distributors for the films *The Lost Century and How to Reclaim It* (released 2023, "Movie #1"), *Close Encounters of the Fifth Kind* (released 2020, "Movie #2")*,* and *Unacknowledged* (released 2017, "Movie #3") (hereinafter "Movies"), a suspension or recission of the contracts attached as Exhibits A-C of our Complaint is necessary, for the following reasons.

(3) On November 3, 2023, I directed my attorneys and representatives to provide formal Notice, by certified mail, of termination of all three contracts, based on Defendants breach, untimely and partial payment, and outright non-payment on all three contracts, due ninety (90) days following their accounting of revenues.

(4) While such notice has been received by Defendants, Defendants have not formally acknowledged termination of these contracts, nor have they notified the numerous third-party vendors, channels, and platforms that they are no longer the rightful distributors of the three films.

(5) As of December 23, 2023, Defendants continue to collect and hold 100% of gross receipts generated by all three Movies, from the third-party vendors involved, and have not substantially paid to the companies I direct and Plaintiffs the 80% of proceeds, due and payable, as our rightful portions, and after subtracting the Defendants' 20% distribution fee.

(6) In August of 2023, and only after the necessity of demand letters, several unproductive video and telephonic meetings, and offering several reasonable payment plans, Defendants made a partial, and untimely, payment of $30,137.46.  *See* (Exh. A-1, Attachment, *Payment History Statement*).

(7) My companies have not received any further payments after that made in August of 2023, which only represented a past-due payment for Movies #2 and #3, on gross receipts collected by Defendants in May 2023.

(8) According to a Revenue and Expense Summary Statement, provided by Defendants themselves, through our online portal, for May 2023 – October 2023, **$674,405.54**

($704,543.10 - $30, 137.46 payment) of total past-due proceeds owed Plaintiffs, remains unpaid by Defendants. *See* (Exh. A-2, Revenue and Expense Summary, Attachment).

(9)   Upon inspection of preliminary numbers of sales and transactions for November and December 2023, the past due amount owed Plaintiffs has now risen to above $1 million for Movies #1 -3, but final revenue numbers due Plaintiffs, have not yet been posted by Defendants for November 2023, or made available to us through our online accounting portal.

(10) Because of the large amounts of revenues untimely paid and unpaid, on November 3, 2023, I authorized providing formal Notice of Termination of contracts and intent to seek an alternate distributor for all three films, but neither myself, nor any of my representatives, have received any acknowledgement from Defendants of our termination notice.

(11) We have similarly received no visible indication from the third-party channels, platforms, or services, themselves, that our films have been taken down, or paused in availability, because no notice of cancelation or termination has been provided by Defendants.

(12) Because of the large amounts of revenues untimely paid and unpaid, I personally directed Defendants to pause on moving the film *The Lost Century And How to Reclaim It,* over to begin transacting Advertising Video on Demand (AVOD)  and Subscription Video on Demand (SVOD) revenues, but received no acknowledgement by Defendants concerning my direction.

(13) AVOD and SVOD revenues are still being collected, and indefinitely held, by Defendants on Movies #2 and #3, despite our November 3, 2023 Notice of Termination of contracts.

(14) Neither Party is currently collecting these AVOD and SVOD revenues for *The Lost Century*, which I have conservatively estimated at $70,000 / week of lost revenues, based on the prior historical performance data available on Movies #2 and #3.

(15)   Far more important to me than the outstanding balances due on these films, is what the Defendants' interference represents to our public and Congressional education campaigns.

(16)   Without Movie #1 on AVOD and SVOD streaming [over subscription services like Amazon Prime, which currently still requires Transactional Video on Demand (TVOD) purchase], such easier availability hurts the social movement for UAP technology Disclosure and the environment, which is far more damaging than monetary losses, currently accruing.

(17)   My efforts to easily educate Members of Congress on the current availability of advanced energy technologies, capable of replacing oil and fossil fuels, and which can solve the global environmental and poverty crisis, is being impacted by Movie #1, not being available over advertising, or subscription-based platforms.

3

(18)     I have paused my personal efforts to market Movie #1 over my Youtube channel, and other available outlets, because of my loss of confidence in Defendants, due to their uncured breaches of contract, and unexplained delays, in timely remitting payments.

(19)     A portion of the proceeds from Movies # 1 – 3, was to be used to fund advanced energy research labs, with the intention of releasing these technology breakthroughs to the public, open-sourced, and without intellectual property or legal restrictions.  This seed funding is not available, as long as Defendants continue to withhold these revenues indefinitely.

(20)     The impact of my over thirty (30) years of leading the Disclosure Project movement is being irreparably harmed, because the vast majority of the public, and Members of Congress, do not automatically, or intuitively, understand that Unexplained Aerial Phenomena (UAPs and UFOs), Extraterrestrial Vehicles (ETVs), and human reverse-engineered Alien Reproduction Vehicles (ARVs), **are not powered by gasoline, oil or fossil fuels**, as thoroughly documented and explained in the film, *The Lost Century and How to Reclaim It* (Movie #1)*.

(21)     The impact of my over thirty (30) years of leading the Disclosure Project movement is being irreparably harmed, because the vast majority of the public, and Members of Congress, do not automatically, or intuitively, understand that advanced energy technologies capable of replacing oil and fossil fuels are **currently available for legally compelled release***, but being withheld by actors in the private sector, defense contractors, and those operating illegally, under color of law, and without Congressional approval or oversight, as thoroughly documented in the film *The Lost Century and How to Reclaim It* and Movies #2 and #3.

(22)     It is my belief that the inability of the Congress as a whole, and the public, to easily understand the two key points represented in ¶20 and ¶21, led to the current Congress's inability to substantially pass the UAP Disclosure Act of 2023, while including any mandatory technology review, mandatory technology disclosure, or release by *eminent domain* of the advanced energy and other life-saving technologies*, or any of the key provisions proposed in original versions of the legislation.

(23)     Such lack of education described in ¶22 led to a 25 year and delayed, UAP records release provision in the UAP Disclosure Act of 2023 passed on December 14, 2023, which will not have any substantial impact on the current environmental crisis, in the foreseeable future.

(24)     I understand from my attorneys that I have a legal duty to mitigate the damage occurring to my educational companies, but I cannot mitigate these damages, without being first permitted to move over all three Movies to a new Distributor, who will hopefully perform on these new contracts without breach, or unlawful interference.

(25)     In current discussions with new potential distributors, from whom I have outstanding offers and am in the process of negotiating finalized contracts, I have come to understand that

4

new distributors cannot efficiently begin to receive gross receipts, or perform on any new contracts, without the third-party platforms, themselves, receiving Affirmative Notice from Defendants that Defendants are no longer the rightful distributors.

(26)   Defendants have been unwilling to provide such Affirmative Notice of Termination, thus far, nor have directed takedown of my companies' produced and wholly-owned Movies, without notice from Defendants themselves, or Court Order providing for such.

(27)   Without judicial pause or recission of the underlying contracts, both the companies I oversee, and the public interest, will continue to experience irreparable harm described herein.

(28)   Due to Defendants failure to remit timely payments, the companies I oversee continue to be unable to fully perform, and make payments on, outstanding production costs and third-party post-release agreements, after the initial crowd-funding was provided by interested and informed members of the public, for the initial production of Movies #1-3.  The only way for these damages to innocent third-parties, not Parties to this action, to mitigate, is by allowing distribution through a new Distributor, separate from Defendants, by confirming judicial suspension or recission of contracts, pending further Judgment on the merits.

(29)   I understand from my attorneys that past revenues currently overdue, our expanded claim for interference damages, pre and post-Judgment interest, and the like, will need to wait for discovery and decision by the fact-finder, on the merits, but suspension or recission of the Contracts A-C affixed to the Complaint, is absolutely necessary to prevent and mitigate the irreparable harms, herein described.

(30)   I have reviewed Defendants' previously filed Rule 7.1 corporate disclosure statement, and the proposed preliminary relief of judicial termination or suspension of contracts will not unfairly prejudice Defendants on the ultimate merits of this action, unreasonably harm Defendants' large financial interests and labyrinthine holdings, numerous parent and subsidiary companies, and other interests disclosed in the continued dealings of the companies in their concern and control; while the damages to our relatively small, single-member LLCs, and mostly volunteer supporting staff, is severe, ongoing, and irreparable.

(31)   Until this preliminary relief is granted, similar to that of the pending proposed Order, the following irreparable harms will continue to occur:  1) damage to the public interest and the environment; 2) lost AVOD and SVOD revenues currently uncollected by either Party; 3) easy access, without transactional payment required, by members of the public and their legal representatives in Congress, through advertising supported and free-to-viewer platforms; 4) unavailability of revenues intended to be re-invested in advanced energy research labs; 5) diminished financial support for our continued educational and messaging efforts; and 6) general ignorance, confusion, and miseducation concerning the serious and vital issues at stake.

Individual Plaintiff identified herein is again willing to testify at any live hearing associated with resolution of Plaintiffs' Motion for Preliminary Injunction, should this Court deem fit to grant a hearing on this Motion to confirm, the foregoing proffers and evidence, as substantially true, and the testimony from a first-person Party and witness.  For these reasons, Plaintiffs' have met their burden of persuasion and respectfully, when considering the narrowly tailored relief requested, request their Motion for Preliminary Injunction be granted, in whole, or in part, as modified as the Court deems just and fit.

## RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Plaintiffs request:

1. Granting Plaintiffs the relief requested in their Motion for Preliminary Injunction (Doc. 13), and associated Proposed Order, as modified or accepted, as appropriate and deemed necessary by the Court.

2. Awarding the costs, reasonable attorneys' fees, and expenses in requiring the necessity of filing this opposed Motion.

3. Awarding such additional and further relief as deemed necessary, just, and proper by this Court.

**Respectfully submitted**,

*/s/ Derek Garcia*
Law Office of Derek V. Garcia, LLC
PO Box 254
Edgewood, NM 87015
(505)-333-8030
derekgarcialaw@gmail.com

*Attorneys for Plaintiffs*

6

**CERTIFICATE OF SERVICE**

*/s/ Derek Garcia*

This is to certify that on this 28st day of December, 2023, the foregoing Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction was filed electronically through the CM/ECF system, with additional copies served by **Email** to the following:

Caryn L. Marcus
*Special Counsel*
Graubard Miller
The Chrysler Building
405 Lexington Avenue - 44th Floor
New York, New York 10174-4499
Direct Dial: (212) 818-8695 | Fax: (212) 818-8881
cmarcus@graubard.com

*Attorneys for Defendants:*

CHICKEN SOUP FOR THE SOULENTERTAINMENT, INC.
TOFG, LLC/d.b.a. 1091 PICTURES