Law Office of Derek V. Garcia, LLC
PO Box 254
Edgewood, NM 87015
(505)-333-8030 (Area Code Required)
derekgarcialaw@gmail.com



CIVIL RIGHTS | CRIMINAL DEFENSE | FAMILY LAW | ENTERTAINMENT LAW

March 12, 2024

**Hon. Dale Ho**
United States District Court Southern District of New York
500 Pearl Street New York, NY 10007; (212) 805-0190

Re: *Sirius Technology Advanced Research, LLC, et al., v. Chicken Soup for the Soul Entertainment, Inc., et al.* - Case No. 23-cv-9560 – **Plaintiffs' Response to Letter Motion – Defendants' Motion to Quash Subpoena**

Dear Judge Ho:

In their Motion to Quash (Doc. 32), Defendants seek to prevent Plaintiffs from receiving non-confidential information concerning similar contract breach claims against identical defendants, Chicken Soup for the Soul Entertainment, Inc., and 1091 Pictures.  Defendants have been sued in legal proceedings in a number of jurisdictions around the country for breach of contract, withholding payments, copyright infringement, and mismanagement / conversion of funds and intellectual property not belonging to Defendants, in relation to improperly withholding proceeds to a variety of independent and small-budget film producers, similar to Plaintiffs in the instant case.  *See* Moorfoot, Addie, "Filmmakers Take Legal Action Against Chicken Soup for the Soul Entertainment as It Faces 'Cash Flow Issues.'"[1]

The discovery rules are explicit in allowing for liberal discovery, without regard to ultimate admissibility at trial:

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. **Information within this scope of discovery need not be admissible in evidence to be discoverable**."  USCS Fed Rules Civ Proc R 26 (**emphasis added**).  Even though Plaintiffs are not required to prove admissibility at this stage, under Fed. R. Evid. 404(b), the Rules of Evidence are clear that evidence of similar "bad acts" and contract breach may be admissible to prove a variety of contested facts and elements of claims, including knowledge, motive, and willful intent:  "**(2)** *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.*

Given that Defendants have now certified, in writing before this Court, that they have no current plans to file for bankruptcy, the underlying evidence in similar breach of contract claims can be used under any variety of permissible uses, including intentional and willful motivation to withhold money from the specific Plaintiffs in this case, motive and intention to willingly and knowingly breach contract, etc. It is premature to further argue relevance, as there is no suggestion that receiving non-confidential information from a third party will in any way jeopardize, or unfairly prejudice, Defendants.   There is no burden to Defendants in producing the information sought.  Defendants, in any event, will ultimately have a variety of motions, including motions in *limine*, available to them to contest the admissibility of the received evidence at trial.

---

[1] Variety Magazine, December 20, 2023,  available at: https://variety.com/2023/film/news/chicken-soup-for-the-soul-1091-pictures-lawsuits-payments-1235838558/ , last visited March 12, 2024.

Plaintiffs here served their subpoena on Blake Cousins, producer and director of several popular documentary feature films.  Mr. Cousins commenced an action in the New York State court by Summons with Notice on November 27, 2023.[2]  Mr. Cousins asserted essentially identical claims against the same defendants for the same claim – nonpayment of streaming and transactional royalties.  It is self-evident that the information that Plaintiffs seek in the subject subpoena is subject to discovery under the applicable Rules. (Mr. Cousins voluntarily dismissed his case shortly after it was filed and before filing a Complaint.)

Here, Plaintiffs are in a business relationship with Blake Cousins, as the Cousins' film(s) features appearances by Dr. Steven Greer, Michael Schratt, and James Goodall, who are also featured in *The Lost Century and How to Reclaim It* documentary and the subject of the instant litigation.   Plaintiffs have not been paid any royalties, or proceeds, by Defendants, since August of 2023, for any of the three films detailed in the Complaint.  Plaintiffs were informed directly of settlement by Blake Cousins, who was paid, in full, by identical Defendants, in this case.

Upon public information, Defendants also have a regular habit and routine of servicing debt, unspecified and ambiguous fees, and charitable donations, both to the parent companies and subsidiaries listed in their Rule 7.1 Corporate Disclosure Statement, and existing under Defendants' exclusive control[3].  Tracing Defendants' use of Plaintiffs' withheld proceeds, rightfully owed revenues, and intellectual property, falls under any number of evidentiary exceptions and permissible uses.  *See* Fed. R. Evid. 406 (evidence of a organization's routine practice admissible).  Understanding what Plaintiffs' money is being used for, while it is being withheld for months by Defendants, without explanation, is especially salient given Defendants' public representations in the *Variety Magazine* article cited *supra* that allege unspecified "cash flow issues" as the motive and cause for non-payment of similar claims.  Plaintiffs adamantly deny they are attempting to dissuade settlement in these numerous other cases, but instead seeking evidence in support of a habit and routine of knowing and willful contract breach, of commingling accounts payable with other existing debt, lack of actual insolvency (amid several published rumors of suspected insolvency), and other permissible uses.   Plaintiffs are not seeking evidence for any improper purpose, such as to harass Defendants personally, but point out that impeachment evidence is permissible use, regardless of admissibility, on its face:  "[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments. '[T]he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.' *Id. See Energizer Brands, LLC v. My Battery Supplier, LLC*, No. 19-CV-06486 (AMD) (CLP), 2021 U.S. Dist. LEXIS 206470, 2021 WL 4972597, at *3 (E.D.N.Y. Oct. 26, 2021)."  *Seawolf Tankers Inc. v. Laurel Shipping LLC*, 345 F.R.D. 55 (S.D.N.Y. 2023).

---

[2] *Cousins v. Rouhana, CSSE, Inc., 1091 Pictures,* New York County Courts, available at: https://unicourt.com/case/ny-sue1-casegg0c28a0f64ddf-2503586,  (Notice of Summons on Contract Breach case).

[3] "Chicken Soup for the Soul Entertainment Is a Toxic Mess,"  Hindenburg Research, February 14, 2018, available at: https://hindenburgresearch.com/chicken-soup-for-the-soul-entertainment-is-a-toxic-mess/ ("CSSE is bizarrely structured as a subsidiary of a subsidiary and pays numerous fees to its affiliates. Public investors receive no proceeds from the popular book series.  The CEO of CSSE was formerly CEO of Winstar, a public company that declared bankruptcy amidst allegations of revenue falsification and accounting improprieties").

Courts confirm that the subpoena power under FRCP 45 is governed by the Rule 26 Standard, the Court may review for relevancy, but ultimately not limit discovery based on admissibility:

"The party issuing the subpoena must demonstrate that that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Gov't Emps. Ins.*, 2023 U.S. Dist. LEXIS 59344, 2023 WL 2771638, at *1. Relevance for purposes of a subpoena issued pursuant to Rule 45 is analyzed under the familiar standard outlined by Rule 26(b)(1). *See Silver Sands Motel Inc. v. Long Island Cap. Mgmt.*, 21-CV-1224 (GRB)(JMW), 2023 U.S. Dist. LEXIS 105243, 2023 WL 4054526, at *5 (E.D.N.Y. June 15, 2023)("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)."). *Bamonte v. Charatan*, No. 7:22-cv-795-KMK-JCM, 2023 U.S. Dist. LEXIS 192072, at *10 (S.D.N.Y. Oct. 18, 2023).

Simply stated, pre-filing investigatory evidence forming the basis of the Cousins' case near-identical claims underlying an unfiled Complaint, are highly probative and relevant on any number of permissible uses, including specific intention to cause Plaintiffs damages by continuing to intentionally withhold Plaintiffs' property, motivations for settling some claims and not others, absence of mistakes or accounting errors as justification for nonpayment in this specific case (when valid and uncontested accounting was achieved by Defendants in other identical cases without issue), etc. This is evidence not publicly available to Plaintiffs in public dockets and records. To be clear, Plaintiffs are primarily seeking the underlying evidence, documents, and correspondence relied on in the Cousins' pre-filing investigations, in their near-identical cases filed in alternate jurisdictions, on claims for contract breach, involving the identical Defendants to the instant case. These materials either lead to the discovery of admissible evidence, or will be admissible themselves, in their own right. The Court may clarify that Plaintiffs must sign a Confidentiality Agreement or stipulate to a Protective Order, for any materials deemed confidential, upon mutual agreement achieved between Cousins and Defendants. Plaintiffs will seek leave of court prior to any public filings or public release of materials marked Confidential, and Plaintiffs will dispose of such evidence at resolution of the instant case. Stipulated Protective Orders are routine and common practice, and widely utilized to avoid any unnecessary restrictions on any parties' right to pursue reasonable discovery, on potentially confidential materials and in the interest of protecting innocent third parties. Should this Court grant any part of Defendants' Motion, Plaintiffs are able to stipulate to such a Protective Order for materials voluntarily agreed and marked Confidential between Cousins and Defendants. Given that the liberal rules of discovery allow for discoverable information of highly relevant nature, regardless of ultimate admissibility, Defendants Motion to Quash should be denied. There is no plausible argument that the materials are categorically irrelevant, given the identical nature of the legal claims of the two Court cases.

Defendants allege, without any evidence or affidavit, in support, that Plaintiffs violated Fed. R. Civ. P. 45(a)(4) by serving the subpoena on Blake Cousins, prior to producing a copy to Defendants' attorney. This allegation is false. As an officer of the Court, Plaintiff's undersigned attorney certifies that he served the subpoena on Caryn Marcus, attorney for Defendants, *prior to* service to Blake Cousins' attorney. Plaintiffs' emails and correspondence establish this fact and are available to the Court, on request, but have not been submitted herewith in the interest of judicial economy, and the 3 page response limitation.

Simply stated, there is no compelling claim of absolute privilege anywhere in Defendant's Motion. Under the liberal rules of discovery detailed in Fed. R. Civ. P. 26, Defendants' Motion to Quash is properly denied. I thank the Court for its time and attention to this matter.

Respectfully,

*/s/ Derek Garcia*

Derek Garcia
Attorney for Plaintiffs

cc: Caryn Marcus, Attorney for Defendants
Michael Steger, Attorney for Plaintiffs
Peter Cane, Attorney for Blake Cousins